IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**ROCHELLE RUNDELL-PRINCEHOUSE,**

Civil No. 10-988-CL

Plaintiff

v.

**FINDINGS AND
RECOMMENDATION**

**MICHAEL J. ASTRUE,**
Commissioner of Social Security

Defendant.

CLARKE, Magistrate Judge:

Plaintiff Rochelle Rundell-Princehouse ("Rundell-Princehouse") seeks judicial review of the

Social Security Commissioner's final decision denying her application for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act. This court has jurisdiction under 42

U.S.C. § 405(g). The Commissioner's decision should be reversed and remanded for the immediate

calculation and award of benefits.

///

///

///

1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Born in 1970, Rundell-Princehouse applied for benefits on August 4, 2005. Tr. 114.[1] She alleges disability since October 1, 2003 (*id.*), due to multiple sclerosis. Tr. 152. The Commissioner denied her application initially and upon reconsideration (Tr. 52-70), and an Administrative Law Judge ("ALJ") held a hearing on July 16, 2008. Tr. 21-51. The ALJ subsequently found Rundell-Princehouse not disabled on August 21, 2008. Tr. 9-20. The Appeals Council accepted additional evidence into the record, but declined review of the matter on June 17, 2010 (Tr. 1-5), and Rundell-Princehouse now appeals to this court.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on January 7, 2011 (Docket # 11).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 404.1520(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 404.1566.

## THE ALJ'S FINDINGS

The ALJ found that Rundell-Princehouse "had severe impairments related to multiple sclerosis and depression," but found that these impairments did not meet a Listed disorder. Tr. 12.

The ALJ concluded that she retained the RFC to perform light work "except that she cannot climb ladders, ropes or scaffolds, and she can occasionally climb ramps or stairs, balance, stoop, and kneel," and limited to "simple, routine repetitive work, requiring only occasional interaction with the general public." Tr. 13. This RFC precluded performance of Rundell-Princehouse's past relevant work, but allowed her to perform work in the national economy. Tr. 18-19. The ALJ therefore found her not disabled. Tr. 19.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see* also *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see* also *Batson*, 359 F.3d at 1193. However, this court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332

4 - FINDINGS AND RECOMMENDATION

U.S. 194, 196 (1947)).

**ANALYSIS**

Rundell-Princehouse challenges the ALJ's findings regarding her symptom testimony. Pl.'s Opening Br. 16.

**I.    Credibility**

**A.    Rundell-Princehouse's Testimony**

Rundell-Princehouse testified at her July 16, 2008, hearing before the ALJ. She stated that she experiences fatigue due to her multiple sclerosis, and that sleep is "one of the only things" that helps her during a multiple sclerosis attack, which occurs every couple of weeks. Tr. 228. She also stated that she experiences dizziness on a weekly basis and cannot drive or perform activities such as shopping when this happens. Tr. 28. She spends her days playing with her three-year old daughter, and, at times, cannot lift her daughter. Tr. 29. During seven or eight months in the year prior to her July 2008 hearing, she required assistance from her own mother in caring for her daughter. Tr. 30. Her multiple sclerosis episodes are unpredictable. *Id.*

Rundell-Princehouse also testified that she has difficulty thinking clearly due to her mulitple sclerosis, and at times requires help to speak in complete paragraphs. Tr. 33. She testified that she can type, but after five or ten minutes her hands become fatigued and she begins to fumble. Tr. 34. She also has intermittent urinary incontinence due to her multiple sclerosis. Tr. 35. Finally, Rundell-Princehouse testified that she can stand for about an hour and a half before she must sit, cannot walk far during a multiple sclerosis flare, and uses a cane during these times. Tr. 39. Her balance is poor. *Id.*

///

5 - FINDINGS AND RECOMMENDATION

## B. Credibility Standards

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. § 404.1529(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter*, 504 F.3d at 1036 (*citing Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)(*en banc*)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883; *see* also *Bunnell*, 947 F.2d at 346-47.

## C. Analysis

The ALJ found Rundell-Princehouse's symptom testimony "only partially supported by the medical record" (Tr. 15), and also found her allegation of disability contradicted by her activities of

daily living. Tr. 16. The ALJ may not base his credibility findings "solely upon" the medical record. *Robbins*, 466 F.3d at 883. Therefore, the ALJ's citation to the Rundell-Princehouse's activities of daily living are discussed first.

## 1. Activities of Daily Living

The ALJ presently cited Rundell-Princehouse's report that she cares for herself without assistance, completes cooking and laundry tasks spread over several days, shops for her family, and occasionally drives. Tr. 15. The ALJ also noted Rundell-Princehouse's report that she plays with and cares for her three year old child. *Id.*

The ALJ may cite a claimant's activities of daily living in his credibility analysis. *Smolen*, 80 F.3d at 1284. Here the ALJ may find that the claimant's reported activities are inconsistent with an allegation of disability. *Batson*, 359 F.3d 1190, 1196; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). However, a claimant need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (rejecting an ALJ's citation to minimal activities which were not transferable to a work environment); *see also Reddick*, 157 F.3d at 722-23.

The activities cited by the ALJ are minimal. A claimant's limited ability to care for herself and to play with a three-year old does not contradict an allegation of disability. This finding should not be sustained.

## 2. Work History

The ALJ also found that Rundell-Princehouse stopped working due to a "business-related

layoff," and "there is no evidence of a significant deterioration in the claimant's condition since that layoff." Tr. 16. The ALJ concluded "a reasonable inference, therefore, is that the claimant's impairments would not prevent the performance of that job, since it was being performed adequately at the time of the layoff despite a similar medical condition." Tr. 16.

The ALJ provides no citation for his finding regarding Rundell-Princehouse's work history, and the record flatly contradicts his finding regarding her "similar medical condition." The record shows that Rundell-Princehouse reported she stopped working due to her multiple sclerosis in approximately 2003. Tr. 414. She also reported that she lost a part-part time job because of her multiple sclerosis, in combination with the employer's bankruptcy. Tr. 310. Though Disability Determination Services ("DDS") analysts repeatedly wrote that Rundell-Princehouse stopped work due to economic conditions (Tr. 375, 439, 446), DDS provided no citation for this finding and, additionally, selectively reads the evidence cited above. Finally, the overall medical record clearly shows that Rundell-Princehouse experienced repeated exacerbations and an overall decline due to her multiple sclerosis throughout the period under review.

This court must sustain an ALJ's inferences based upon the record and reasonably drawn. *Batson*, 359 F.3d at 1193. The ALJ's present inference regarding Rundell-Princehouse's work history and her credibility is neither based upon the record nor reasonable. This finding should not be affirmed.

### 3. Medical Record

The ALJ also found Rundell-Princehouse's symptom testimony unsupported by the medical record. Tr. 15. He did not explain this finding, other than to state that Rundell-Princehouse had "essentially routine or conservative" treatment, and that she "remained off her medications as a

8 - FINDINGS AND RECOMMENDATION

matter of personal choice." *Id.*

The Commissioner submits that the ALJ may cite routine treatment in discrediting a claimant's symptom testimony. Def.'s Br. 23. The Commissioner's indicated citation describes a claimant with low back pain who responded favorably to physical therapy and anti-inflammatory medication. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008). This reasoning is inapplicable to Rundell-Princehouse, who has a progressive and fatal neurological disorder with limited available treatment and without cure. It is unclear what treatment the Commissioner would infer that Rundell-Princehouse should have utilized. For all of these reasons, the Commissioner's citation is inapplicable to the ALJ's finding that Rundell-Princehouse's symptom testimony was not credible because she utilized conservative treatment.

Further, the record does not support the ALJ's conclusion that Rundell-Princehouse did not take medication as a matter of "personal choice." Her treating physicians prescribed a variety of multiple sclerosis drugs throughout the period under review. Tr. 344, 352, 480, 482. Rundell-Princehouse could not tolerate Avonex because it caused flu symptoms as a side effect (Tr. 510), and, ultimately, could not tolerate Copaxone due to irritation at the injection site. Tr. 553. Rundell-Princehouse regularly took prednisone as directed during multiple sclerosis flares. Tr. 290, 480, 483. While a finding that a claimant ceased medication due to "mild" side effects permits an inference that the claimant's reported pain is not disabling, *Tomasetti*, 533 F.3d at 1039, the side effects described by Rundell-Princehouse are not adequately characterized as "mild." Further, Rundell-Princehouse continued to take other prescribed medications, such as various antidepressants and Topomax, throughout the period under review. Tr. 279, 311, 343, 289, 315, 319, 346, 539, 545, 547,

9 - FINDINGS AND RECOMMENDATION

562, 564. These regimes were adjusted when the medications were not effective. Tr. 279, 342, 485, 490.

The ALJ's finding that Russell-Princehouse failed to follow prescribed treatment as a matter of "personal choice" is thus simply not based upon the record and should not be affirmed.

Rundell-Princehouse additionally reported that she could not afford her antidepressants and Copaxone at various times because she lost her health insurance coverage. Tr. 332, 336, 414, 418. The ALJ may not chastise a claimant for failing to follow treatment she cannot afford. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). The ALJ erroneously failed to consider this in his analysis that she stopped taking medication due to "personal choice."

In summary, the ALJ's finding that Ms. Rundell-Princehouse declined to take medication "for personal reasons" is neither based upon the record nor the correct legal standards. This finding should not be affirmed.

## C.     Credibility Conclusion

The ALJ failed to properly assess Rundell-Princehouse's symptom testimony, and the ALJ's conclusion on the matter should not be affirmed. The effects of this error are discussed below.

## II.     Lay Testimony

Rundell-Princehouse also challenges the ALJ's evaluation of lay testimony submitted by her husband, Noel Princehouse. Pl.'s Opening Br. 21.

### A.     Noel Princehouse's Testimony

Princehouse testified at Rundell-Princehouse's July 16, 2008, hearing before the ALJ (Tr. 41-45), and submitted a questionnaire to the record. Tr. 143-50. He stated that he observed Rundell-

10 - FINDINGS AND RECOMMENDATION

Princehouse's partial paralysis on her left side, and "problems" with her speech, dexterity, vision, walking, and completing relatively simple tasks.    Tr. 42.  Princehouse testified that his wife has balance and dexterity "troubles" even when she is not experiencing an acute multiple sclerosis attack. Tr. 43.  He testified that Rundell-Princehouse requires excessive rest, and "typically sleeps 12 hours a day," which is "usually not enough." Tr. 44. Finally, Princehouse testified that Rundell-Princehouse experiences mood swings associated with her multiple sclerosis, is socially inept, cannot pick up her young daughter, and at times cannot complete any household chores. Tr. 44-45.

Princehouse's undated[2] questionnaire responses indicated that Rundell-Princehouse shops for groceries, is easily upset by other people (Tr. 144-45), can drive, go for half-mile or shorter walks (Tr. 146), naps daily (Tr. 147), and performs household chores such as laundry and vacuuming. Tr. 147.  Princehouse stated that his wife never performed chores such as taking out the trash, yard work, or gardening. *Id.* He also reported that Rundell-Princehouse has short-term memory loss (Tr. 148), and must be reminded to pay bills. Tr. 149.

## B.    Standards: Lay Testimony

The ALJ has a duty to consider lay witness testimony.  20 C.F.R. §§ 404.1513(d); 404.1545(d); *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2008).  Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ may

---

[2]The responses state that Rundell-Princehouse did not have children (Tr. 148), indicating that the form was completed before the June 2005 birth of her daughter. Tr. 398.

reject lay testimony predicated upon the testimony of a claimant found not credible. *Valentine v.
Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

## C.   Analysis

The ALJ described Princehouse's testimony. Tr. 16. The ALJ concluded that it was
"contradicted by the observations of several of the claimant's treating and examining medical
sources. Moreover, as he does not have medical or vocational expertise and he has a financial
interest in the outcome of the case [sic]. Therefore, his opinions are of limited value . . . ." *Id.* The
ALJ consequently assigned Princehouse's testimony "little weight." *Id.*

### 1.   Lay Witness Expertise

Lay witness testimony is valuable because it is based upon the witness's observation of a
claimant's functioning. *Dodrill*, 12 F.3d at 918-919. The Ninth Circuit clearly instructs that an ALJ
may not reject lay testimony simply because the lay witness is not "knowledgeable in the medical
and/or vocational field." *Bruce*, 557 F.3d at 1116. The ALJ's rejection of Princehouse's testimony
is inconsistent with this standard and should not be affirmed.

### 2.   Lay Witness Interest

The ALJ also may not reject lay testimony simply because the lay witness is an "interested
party." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). This is because
lay witness testimony derives its value from the witness' observations of the claimant. *Id.* While
an ALJ may reject lay testimony if he finds that the lay witness "exaggerated a claimant's symptoms
*in order* to get access to his disability benefits, as opposed to being an "interested party" in the
abstract," the ALJ must explain such findings. *Id.* (emphasis original). The ALJ presently

12 - FINDINGS AND RECOMMENDATION

articulated no such rationale. The ALJ's reasoning that Princehouse's testimony should be rejected because he has a "financial interest" should not be affirmed.

### 3.    Lay Witness Testimony and the Medical Record

Finally, the ALJ found Princehouse's testimony contradicted by the medical record. Tr. 16. The ALJ may not reject lay testimony for this reason alone. *Bruce*, 557 F.3d at 1115. The ALJ did not articulate the manner in which Princehouse's observations were contradicted by the medical record. The medical record indicates that Rundell-Princehouse had an unsteady gait and walked with a cane when needed (Tr. 555), experienced confusion in speaking (Tr. 327, 564), and had "variable" mental status test results. Tr. 415. The medical record also reflects Rundell-Princehouse's reports of fatigue throughout. The ALJ's finding on this matter does not reflect the record and should not be sustained.

### C.    Conclusion: Lay Witness Testimony

This court may find an ALJ's rejection of lay testimony harmless only when it can "confidently conclude" that "no reasonable ALJ, when fully crediting that testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). Princehouse's hearing testimony described Rundell-Princehouse's left-side partial paralysis, inability to lift, and difficulty balancing. Tr. 42-43. These limitations are inconsistent with the ALJ's finding that Rundell-Princehouse could perform light work with "occasional" ability to climb, balance, stoop, and kneel. Tr. 13. This court therefore cannot "confidently conclude" that crediting Princehouse's testimony would allow the ALJ to reach the same disability determination. The effects of the ALJ's error are discussed below. *Infra*, 19.

13 - FINDINGS AND RECOMMENDATION

### III.    Step Two Findings

Rundell-Princehouse argues that the ALJ erroneously failed to find her headaches and temporomandibular joint ("TMJ") impairments "severe" at step two in the sequential proceedings. Pl.'s Opening Br. 12.

#### A.    Step Two Standards

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month durational requirement. 20 C.F.R. § 404.1509; 404.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

Step two findings must be based upon medical evidence. 20 C.F.R. § 404.1520(a)(ii). The Commissioner's regulations instruct that an impairment is "not severe" if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The step two inquiry is a "threshold inquiry." *Bowen*, 482 U.S. at 153. Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

#### B.    Analysis

Rundell-Princehouse does not presently assert any work-related limitations stemming from her TMJ dysfunction. Pl.'s Opening Br. 12-13; Pl.'s Reply Br. 1-2. She therefore fails to establish that her TMJ is a "severe" impairment. The ALJ's finding on this matter should be affirmed.

The record shows that Rundell-Princehouse was consistently diagnosed with a headache disorder. Tr. 341, 490. That impairment is thus medically determinable under 20 C.F.R. §

404.920(a)(4)(ii). Rundell-Princehouse testified that when a headache occurs, approximately ever two weeks, she must "remove myself from the situation and have to go take a nap." Tr. 35. This is a work-related limitation under 20 C.F.R. § 404.1521(a). The ALJ therefore should have found her headaches "severe" at step two.

## IV.    Step Three Findings

Rundell-Princehouse asserts that the ALJ erroneously evaluated her multiple sclerosis at step three in the sequential proceedings. Pl.'s Opening Br. 14. She does not, however, explain the manner in which the allegedly improperly evaluated evidence establishes that the ALJ should have decided step three in her favor.

At step three, the ALJ must determine whether a claimant's medically determinable impairment "meets" or "equals" associated criteria in the Commissioner's regulations. 20 C.F.R. § 404.1520(a)(4)(iii). This determination must be adequately explained. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

The ALJ stated that he considered the appropriate Listing, § 11.09, and concluded that, "based on a review of all the evidence, including testimony at the hearing, the limitations caused by the claimant's symptoms of multiple sclerosis - alone or in combination with any other impairment - do not rise to a level of severity necessary to "meet" or "medically equal" the criteria of any the listed impairments. Tr. 12.

This analysis is insufficient. The Ninth Circuit clearly instructs that such a statement is inadequate. *Marcia*, 900 F.2d at 176. However, Rundell-Princehouse presently fails to make any argument asserting that this court should make a further determination regarding the effect of the

15 - FINDINGS AND RECOMMENDATION

ALJ's error at step three. Pl.'s Opening Br. 14-16; Pl.'s Reply Br. 3. She does not explain the manner in which the indicated medical evidence establishes that she meets or equals Listing § 12.09 pertaining to multiple sclerosis. This court therefore declines to make further findings regarding the matter.

## V.    RFC Assessment

Rundell-Princehouse also claims the ALJ erroneously evaluated her mental, or nonexertaionl limitations, under the Commissioner's regulations and Administrative Rulings pertaining to the ALJ's RFC assessment. Pl.'s Opening Br. 23.

### A.    Standards

Rundell-Princehouse's challenge to the ALJ's RFC assessment cites an Administrative Ruling issued by the Commissioner, SSR 85-15. Pl.'s Opening Br. 24. This authority is applicable only to mentally ill claimants with "solely" nonexertional limitations. SSR 85-15 at *1 (*available at* 1985 WL 56867). Rundell-Princehouse alleges disability based upon a physical impairment, as well as a mental impairment, and she clearly has exertional limitations, discussed above. SSR 85-15 is therefore inapplicable and will not be discussed.

Rundell-Princehouse further asserts that the ALJ failed to properly evaluate he "mental" RFC under the Commissioner's regulations. Pl.'s Opening Br. 23-24. The ALJ's RFC assessment must consider statements a claimant or lay witness make about the claimant's limitations. 20 C.F.R. § 404.1545(a)(3). Because the ALJ presently failed to make adequate credibility determinations regarding the testimony of Rundell-Princehouse and the lay witness, the ALJ's RFC assessment cannot presently be sustained. Therefore, it is unnecessary to discuss additional assignments of error

pertaining to the ALJ's RFC assessment.

## IV.    Step Five

Finally, Rundell-Princehouse asserts that the ALJ erred at step five in the sequential proceedings. Pl.'s Opening Br. 27. She specifically asserts that the ALJ's questions to the vocational expert failed to include all of her limitations described in her testimony and the medical record. *Id.*

### A.    Standards: Step Five

After an ALJ determines that a claimant cannot perform past relevant work at step four, the ALJ must determine if the claimant can perform work in the national economy at step five. 20 C.F.R. § 404.1520(a)(4)(v). Here the ALJ may draw upon the testimony of a vocational expert, and his questions to the vocational expert must include all limitations that are properly supported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). A vocational expert's recognized expertise provides the foundation for his testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

### B.    Analysis

Because the ALJ did not properly assess Rundell-Princehouse's testimony or the lay witness testimony, his questions to the vocational expert did not include all properly supported limitations. Such an omission is erroneous. *Osenbrock*, 240 F.3d at 1163-65. Therefore, the ALJ's step five findings should not be affirmed. The effects of this error are addressed below.

## V.    Remand

The ALJ erroneously evaluated Rundell-Princehouse's testimony and the lay testimony.

Consequently, the ALJ's RFC analysis was flawed, and the ALJ made additional errors in his step four and five findings. His decision cannot be sustained. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*cert. denied*, 531 US 1038 (2000)). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir 2004)). The court may not award benefits punitively, and must conduct a credit-as-true analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F2d at 348). The reviewing court declines to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ analysis of testimony submitted by Rundell-Princehouse and Princehouse is erroneous for the reasons established above. The ALJ's subsequent RFC assessment and

hypothetical questions to the vocational expert at step five in the sequential disability analysis are therefore not based upon the proper legal standards.

In determining whether to award benefits or remand the matter for further proceedings the court must determine whether "outstanding issues remain in the record" under the second prong. *Strauss*, 635 F.3d at 1138. Neither party asserts that the record is insufficient, and the court finds the record sufficiently developed.

Therefore the court must finally determine whether the record clearly requires an award of benefits after the improperly rejected evidence is credited. *Id.* Specifically, Rundell-Princehouse testified that she has difficulty thinking clearly (Tr. 33), and that she experiences fatigue precluding all activity during multiple sclerosis flares, which occur every few weeks. Tr. 228. The lay testimony additionally indicates that Rundell-Princehouse must sleep at least twelve hours per day and has difficulty completing simple tasks. Tr. 42.

The vocational expert testified that, based upon Rundell-Princehouse's testimony, she would be unable to perform competitive employment. Tr. 49. He specifically stated that the combined effect of Rundell-Princehouse's reported fatigue and difficulties in comprehension and concentration would lead to decreased productivity and increased absences which would "contribute to problems with sustaining competitive employment." *Id.* He also stated that an individual absent more than two days per month would be unable to sustain competitive employment. Tr. 50.

The improperly omitted evidence establishes that Rundell-Princehouse is disabled. Consequently, this testimony should be credited and Rundell-Prinechouse should be found disabled under the Commissioner's regulations.

19 - FINDINGS AND RECOMMENDATION

## **CONCLUSION AND RECOMMENDATION**

The Commissioner's decision that Rundell-Princehouse did not suffer from disability, and is not entitled to benefits under Title II of the Social Security Act, is not based upon correct legal standards or supported by substantial evidence. The Commissioner's decision should be reversed and remanded pursuant to 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

## **SCHEDULING ORDER**

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due by November 18, 2011. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response by December 5, 2011. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this ___ day of October, 2011.

Mark D. Clarke
United States Magistrate Judge

20 - FINDINGS AND RECOMMENDATION